IN RE INTEREST OF DANIELLE D. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
CHERYL S. AND STEVEN S., APPELLANTS.

595 N.W. 2d 544

Filed July 2, 1999. No. S-98-579.

Jeffrey A. Wagner for appellants.

James S. Jansen, Douglas County Attorney, and Melissa A. Stanosheck, for appellee.

Sandra Stern, guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Steven S., stepfather, and Cheryl S., natural mother of Danielle D., Derrick J., and Deanna J., appeal an order of the separate juvenile court of Douglas County, Nebraska, finding Danielle, Derrick, and Deanna to be juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 1997). Cheryl did not file a brief but filed a notice of joining Steven's appeal in which she agrees with the assignments of error, the statement of facts, and the arguments, and joins in the prayer for relief as stated in Steven's brief. We are treating this case as an appeal by Cheryl. We affirm.

## BACKGROUND

The State of Nebraska filed an amended petition alleging that Danielle, Derrick, and Deanna came within the meaning of § 43-247(3)(a) by reason of the faults and habits of Steven and Cheryl. Specifically, the amended petition alleged that "[o]n or about January 28, 1998, and/or on other occasions in the past, Steven . . . used inappropriate and excessive physical discipline on [Danielle, Derrick, and Deanna], placing said children at risk

for harm" and that Steven's "use of alcohol and/or controlled substances places said children at risk for harm." The amended petition further alleged that "Cheryl . . . has taken insufficient steps to protect said children . . . ."

On May 6, 1998, an adjudication hearing was held in the juvenile court. At the adjudication hearing, the State called Danielle to testify. The State and guardian ad litem requested that Danielle, who was 16 years old at the time, be allowed to testify in chambers. Both counsel for Steven and Cheryl objected on grounds that they did not receive advance notice of such request and that the State did not demonstrate a compelling need for in-chambers testimony. The trial court found that Nebraska law does not require such procedures and allowed Danielle's testimony to be taken in chambers without Steven and Cheryl being present, noting that "the best interests of the child [are] paramount." Additionally, the trial court required that Danielle's testimony be taken on the record, that all counsel be present, that both Steven's and Cheryl's counsel have the opportunity to cross-examine Danielle, and that Steven and Cheryl be allowed to consult with each of their counsel between the direct examination and the cross-examination of Danielle.

Danielle testified that on January 28, 1998, she was struck by Steven as a form of discipline for borrowing and shrinking a friend's skirt and for skipping school. Danielle testified that Steven grabbed her by the ear while she was in the front room of their home, dragged her by the ear to the hallway, hit her with a television remote control, and then slapped her more than 10 times. Danielle testified that her nose started bleeding and that Steven stopped hitting her long enough for her to get some toilet paper from the bathroom for her nose, but then continued slapping her in the bathroom. Danielle described falling to the floor several times and each time she got up, Steven would slap her again. Danielle testified that Cheryl was at work when this incident occurred.

Danielle testified regarding another incident that occurred around Christmas 1997 in which Steven grabbed her by the hair and smacked her for skipping school, in which incident she suffered a black eye. Danielle testified that Cheryl was not home

during this incident either but that she later told Cheryl how she had received the black eye and Cheryl did nothing about it.

Danielle also testified about another incident in which she and Steven got into an argument and Steven hit her. She stated that after Steven hit her, she went to her room, and that Steven followed her and yelled at her. Danielle testified that just before Steven hit her again, Cheryl came into the room and was hit on the arm by Steven when she intervened.

Danielle further testified that Steven yelled at her almost every day, calling her such names as "slut," "whore," and "stupid." According to Danielle, Steven lost his temper regularly and at those times, he would throw and break things.

Danielle further testified regarding Steven's alleged drug usage. She stated that during December 1997, Steven would smoke marijuana up to three times a day, and that he would smoke marijuana with Derrick "all the time." Danielle also testified that Cheryl's friends would come over and smoke marijuana and that Cheryl was around when this happened.

David E. Isbell, an investigator for the Ralston Police Department, was also called as a witness by the State. Isbell testified that on January 29, 1998, he was contacted by Danielle's high school to investigate possible child abuse and injuries Danielle had allegedly received the previous night. Isbell testified that when he met with Danielle on January 29, he observed injuries to her face, specifically a cut to the inside of her mouth, a bruise to her lip where the teeth had almost gone through, a red hemorrhage to the right eye, a blackened area around the right eye, and swelling around the right eye. Isbell also testified that he spoke with Cheryl about the incident and that Cheryl stated she was aware of the incident that had occurred in her home the previous evening, saying that when she got home from work that night, her children told her Steven had struck Danielle. Isbell further testified that Cheryl told him that when she asked Danielle about what had happened, Danielle told her Steven had "smacked" or "slapped" her. Isbell testified that Cheryl admitted to knowing of other incidents between Danielle and Steven and between Derrick and Steven. Cheryl told Isbell she knew of an incident that occurred around Christmas 1997 between Danielle and Steven in which Danielle received a black eye when Steven

had slapped her. Isbell also testified that Cheryl admitted that around Christmas 1997 there had been a problem where Derrick had "bowed up" against Steven and Steven had smacked him.

Isbell further testified that Cheryl told him she had confronted Steven on several occasions in reference to the problems with Danielle and Derrick, and had told him not to hit the children. She acknowledged a problem in the home and thought the whole family needed anger management classes. Isbell testified that Cheryl acknowledged that on January 28, 1998, the children had confronted her and given her an ultimatum either to choose them over Steven or they were going to call and report him to the police. Isbell also stated that Cheryl told him she was afraid to contact Child Protective Services or law enforcement because she did not want her children taken away from her. Finally, Isbell testified that based on his interview with Cheryl, he issued her a criminal citation for child neglect for failure to report incidents of physical abuse.

The State also called Shirley King, the case manager from Child Protective Services assigned to investigate the case. King testified as to her conversations with Cheryl and Steven. When asked about the January 28, 1998, incident, Cheryl told King that she was not there when it happened but that she noticed only a slight mark to Danielle's lip and was not aware of any bruising to her eye. King testified that Cheryl denied that there were any previous incidents of physical abuse, even though the children reported to King that they told Cheryl about problems on several occasions. In regard to the Christmas 1997 incident with Derrick, Cheryl indicated to King that she did not see any bruises on Derrick, but that Derrick had told her that he and Steven had "gotten into it." King testified that Cheryl further indicated that she had seen bruises on Danielle in the past but thought those were due to Danielle and Steven wrestling or "horsing around." Cheryl denied any drug usage in the home by Steven or herself.

King further testified that Steven admitted to her that he hit Danielle in the face with the television remote control but stated it was an accident. King testified that Steven also denied any drug usage. King stated that based upon her investigation, she substantiated physical abuse of Danielle and failure to protect

Danielle on the part of Cheryl due to the discussions with the children that Cheryl had been made aware of numerous incidents.

Derrick testified on behalf of Steven. Derrick testified that he was not home on January 28, 1998, when Danielle was struck but that Danielle told Derrick that she and Steven had gotten into an argument and that it was "no big deal." Derrick also testified that Danielle told him that Steven had smacked her around the house or dragged her into the kitchen by her ear and that he punched her in the mouth and hit her with the television remote control. Derrick stated that he told Cheryl what Danielle said had happened. Derrick testified that he has never seen Steven strike Danielle or Deanna but that he has been struck by Steven on two occasions, both of which occurred when he and Steven had gotten into an argument and Derrick had swung at Steven first. On one such occasion, Derrick testified that Steven punched him in the face with his fist and that he told his mother about being hit. Derrick also testified that Danielle hit him, Deanna, and Steven. Derrick testified that Danielle hits people every day and likes to hit Derrick and Steven in their private parts.

Derrick denied ever smoking marijuana in Steven and Cheryl's home and denied any knowledge of drug use by Steven. On cross-examination however, Derrick admitted that Cheryl's friend would come over and use drugs and that Cheryl knew her friend was doing this when she was not at home. Derrick also acknowledged hearing Steven call Danielle names such as "bitch," "slut," and "whore."

On cross-examination, Derrick admitted that he had asked Cheryl to leave Steven on a couple of occasions due to his being hit by Steven and due to Steven's continued screaming and yelling at Danielle.

Cheryl testified on her own behalf. Regarding the January 28, 1998, incident, Cheryl testified that Danielle told her Steven had smacked her but that Danielle also said she had been hitting and kicking Steven, as she normally did. Cheryl stated that she believed Danielle had orchestrated the January 28 incident so that she would be removed from the home. Cheryl also admitted that around Christmas 1997 Danielle told her Steven had hit her

and that Danielle had a mark on her eye but that Cheryl did not know if it was a black eye or makeup. Cheryl testified that she did not have any knowledge of her friend's coming over and using drugs in Steven and Cheryl's home. Cheryl admitted that the children had threatened to leave or to contact law enforcement if she did not leave Steven.

At the close of the evidence, the trial court found the allegations of the amended petition to be true by a preponderance of the evidence. Steven and Cheryl both timely appealed. On our own motion, we removed the matter to this court under our authority to regulate the caseloads of this court and the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

Steven and Cheryl assign, restated, that the trial court erred in (1) granting the State and the guardian ad litem's request for in-chambers testimony of Danielle and (2) finding the allegations in the State's petition to be true by a preponderance of the evidence.

## SCOPE OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999).

## ANALYSIS

We analyze this case as an appeal by Cheryl, the children's natural mother. We do not analyze this case as to Steven, the stepfather, and our holding is only as to the natural parent. Steven and Cheryl allege that the trial court erred in allowing Danielle to testify outside of their presence. Steven and Cheryl argue that by allowing Danielle to testify in chambers, their due process rights to confront and cross-examine adverse witnesses were violated. Steven and Cheryl concede that the right to confront and cross-examine is not absolute and that in-chambers testimony is sometimes appropriate. Steven and Cheryl argue,

however, that when the State is seeking to have a child testify in chambers, the State must make some showing that requiring the child to testify in the presence of his or her parents would be detrimental to the child.

*In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992), was a termination of parental rights case. We held in that case that procedural due process is applicable to proceedings for termination of parental rights. This procedural due process includes notice to the person whose right is affected by the proceedings to inform the person concerning the subject and issues involved in the proceedings; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

The case *In re Interest of Kelley D. & Heather D., supra*, was a temporary adjudication case where the trial court allowed the children to testify while seated in such a way so that the children would not be required to look at their father during the testimony. The father was only able to see the children's backs, and the father's counsel was able to see the sides of the children's faces, but not their eyes. The father's objection that this procedure violated his right to confrontation was overruled. We held in this case that the manner in which the children were situated during questioning did not violate any right of fundamental fairness or confrontation.

In deciding due process requirements in a particular case, a court must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. See *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991). Due process is flexible and calls for such procedural protections as a particular situation demands. *In re Interest of L.V., supra.*

Neb. Rev. Stat. § 43-279.01(1) (Reissue 1998) states in part that when a petition alleges a juvenile to be within the provisions of § 43-247(3)(a) and the parent or custodian appears with or without counsel, the court shall inform the parties of the right to confront and cross-examine witnesses.

■■■■■■

■■■ A petition brought under § 43-247(3)(a) is brought on behalf of the child, not to punish the parents. *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). The purpose of the adjudication phase of a proceeding is to protect the interests of the child. *Id.*

In the instant case, the State called Danielle as a witness and the State and guardian ad litem requested that her testimony be heard in chambers. Upon this request, the trial court's response was simply, "[a]ll right." Both Steven's and Cheryl's counsel then objected on the grounds that they did not receive advance notice of such request and that the State did not demonstrate a need for in-chambers testimony. However, the trial court allowed Danielle to testify outside the presence of Steven and Cheryl.

■■■ We now hold that when the State seeks to have a child testify in chambers at an adjudication or termination hearing, the State must give notice of such request to the parents or their counsel prior to the adjudication or termination hearing. Further, a juvenile court must conduct a hearing separate from the adjudication or termination hearing to determine whether reasons exist for excluding the parents from the child's testimony at the adjudication or termination hearing. The separate hearing must be held prior to or at the adjudication or termination hearing before the child is allowed to testify. At the separate hearing, the State must show that the presence of the parents during the child's testimony would be harmful to the child and, therefore, that the child should be allowed to testify in chambers. A child should be allowed to testify in chambers at a separate hearing when there are legitimate concerns about the child's testifying in the presence of his or her parents. It is only logical that the child not be faced with the risk of being harmed when that is what the court is trying to prevent by holding the separate hearing. Once the State has made a showing as to why the child should be allowed to testify in chambers, it is then within the juvenile court's discretion to determine whether the child will be allowed to testify in chambers.

In the instant case, Steven and Cheryl were not given advance notice of the State's request that Danielle's testimony be taken in chambers. Further, the record contains no showing by the State that the presence of Steven and Cheryl during Danielle's

testimony could be harmful to Danielle. Therefore, there is no justification on the record to support the trial court's decision to allow Danielle to testify in chambers. We hold that the trial court abused its discretion.

 Steven and Cheryl also assert that the trial court erred in finding that the State proved the allegations in the petition to be true by a preponderance of the evidence. Section 43-279.01(3) provides that when adjudicating whether a juvenile is dependent or neglected within the purview of § 43-247(3)(a), the State must establish its allegations by a preponderance of the evidence. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman,* 255 Neb. 120, 582 N.W.2d 350 (1998).

We find, in our de novo review, that even if we exclude the testimony of Danielle, that the other evidence submitted by the State shows by a preponderance of the evidence that the allegations of the petition are true. Isbell testified that he observed injuries to Danielle's face including a cut to the inside of her mouth, a bruise to her lip where her teeth had almost gone through, and a blackened area and swelling to the right eye. Cheryl told Isbell that her children had reported to her that Steven had smacked and slapped Danielle the evening before Isbell made his observations. Cheryl admitted to Isbell that she was aware of prior incidents, specifically the one occurring around Christmas 1997 when Danielle had received a black eye after Steven slapped her. Cheryl also told Isbell that her children had given her an ultimatum to choose between Steven and the children or they were going to report Steven to the police but that Cheryl was afraid to call Child Protective Services because she did not want her children taken away from her. King testified that Cheryl had admitted to seeing bruises on Danielle in the past and that Steven admitted to her that he had hit Danielle in the face with the television remote control but that it was an accident. Also considered is the testimony of Derrick that he had asked Cheryl to leave Steven because of Steven's hitting Derrick and because of Steven's screaming and yelling at Danielle, calling her a "bitch," a "slut," and a "whore." There is also evidence of drug use by Cheryl's friend in the home when Cheryl was not present.

The evidence set forth above is sufficient, if believed by the trier of fact, to prove the allegations of the petition by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, the judgment of the juvenile court is affirmed.

AFFIRMED.